IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| SPRINGFIELD LANDMARKS | ) | |
| PRESERVATION TRUST | ) | Case No. 10-63128-ABF-11 |
| | ) | |
| Debtor. | ) | |

**JOINT DISCLOSURE STATEMENT
RELATING TO JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF SPRINGFIELD LANDMARKS PRESERVATION TRUST
and GILLIOZ RESTORATION PARTNERSHIP, LP**
(*Information for Purposes of Soliciting Acceptances of Plan of Reorganization*)

## ARTICLE I

### Introduction

1.01.    Proponent.  This Disclosure Statement ("Disclosure Statement") has been prepared and is being distributed by SPRINGFIELD LANDMARKS PRESERVATION TRUST ("SLPT") and GILLIOZ RESTORATION PARTNERSHIP, LP ("GRP"), Debtors herein or sometimes referred to collectively as the Debtor, and describes the Chapter 11 Plan of Reorganization dated May 3, 2011 (the "Plan") filed within the bankruptcy proceedings.

1.02.    Purpose.  The purpose of this Disclosure Statement is to enable Debtor as the proponent of a Plan which is being presented to the Court to comply with Chapter 11 U.S.C. Section 1125(a) which requires the proponent of the Plan to disclose adequate information for each holder of a claim or interest to make an informed judgment about the Plan in exercise of their right to vote for acceptance or rejection of Debtor' proposed Plan.  This Disclosure Statement contains a discussion of the Debtor's business related financial information, properties, and a summary and analysis of the Plan.

1.03.    Disclaimer/Reliance.  This Disclosure Statement is intended to provide creditors with adequate information to make an informed decision in voting to accept or reject the Debtor's Plan of Reorganization. **Statements and representations made in this Disclosure Statement have been obtained from sources believed to be reliable but are not guaranteed as to their accuracy and completeness.  The statements and representations are true and accurate to the best of the Debtor's knowledge, information, and belief.  Certain information relating to projections and values is necessarily subjective and constitute opinions of the Debtor or authorized representatives.  Creditors are encouraged to consult with their financial advisers, attorneys, or other creditors in order to obtain a more complete understanding of the financial and legal implications of the Disclosure Statement and Plan.**

1.04.    Definitions, Interpretation, and Rules of Construction.  Certain terms used in the Disclosure Statement may also be used in the Plan which contains a schedule of definitions or meanings.  The definitions in the Plan are applicable to the Disclosure Statement.  The provisions of the Plan shall control over the provisions of any other agreement or document and over any descriptions thereof contained in the Disclosure Statement, other than the Confirmation Order created in connection with the Plan as an adjunct or supplement thereto or required thereby.  Any

1

term that is not otherwise defined within the Plan, but that is used in the Bankruptcy Code or Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable.

1.05.  <u>Procedure.</u>  Pursuant to Local Rule 3016-2B of the United States for the Western District of Missouri the Bankruptcy Court may conditionally approve the Disclosure Statement.  If or when the Bankruptcy Court has conditionally approves any Disclosure Statement all parties in interest shall receive the Bankruptcy Court's Order (a) fixing a time for filing objections to the Disclosure Statement; (b) fixing a date for the hearing on final approval of the Disclosure Statement to be held if a timely objection is filed; (c) fixing a date for the hearing on confirmation; and (d) fixing a time in which the holders of claims in interest may accept or reject the Plan.  The hearing on final approval of the Disclosure Statement may be concurrent with the hearing to confirm Debtor's Plan.  The hearing will be held at the U.S. Courthouse, Bankruptcy Courtroom, 2nd Floor, 222 John Q. Hammons Parkway, Springfield, Missouri 65806.  Objections to the adequacy of the disclosures stated and the confirmation of the Plan must be filed with the Court and served upon the attorney for the Debtor at the address and by the deadline set forth in the conditional Order and Notice or it will not be considered at the hearing.

1.06.  <u>Voting.</u>  If the Disclosure Statement has been conditionally approved the Disclosure Statement and proposed Plan will be accompanied by a Court Order conditionally approving the Disclosure Statement for circulation with the Plan to claim holders and parties in interest together with a separate ballot.  In order to vote for or against the Plan, an eligible and qualified voter must complete, date, sign, and mail the accompanied ballot to the attorney for Debtor, at the address as follows:  David E. Schroeder, Attorney for Debtor, 1524 E. Primrose, Suite A, Springfield, MO 65804, telephone (417) 890-1000, Fax (417) 886-8563.  **The ballot must be received by the deadline set forth in the Court Order approving the circulation of the above-described materials.**

1.07.  <u>Confirmation of Plan</u>.  Debtor's Plan of Reorganization or any Amended Plan filed by Debtor must be confirmed by the Court before it is effective.  The Court will schedule a confirmation hearing on the proposed Plan.  **The holders of all claims or interests will receive notice of the hearing.**  (Notice of hearing may be set forth in a Court order conditionally approving the Disclosure Statement as described in Section 1.05 above).  At the confirmation hearing the Court will determine whether the requisite number of classes and creditors have accepted the Plan and determine whether all other requirements of confirmation have been satisfied.

1.08  <u>Contact for More Information.</u>  If you want additional information about the Disclosure Statement or Plan, you should contact the attorney for Debtor, David E. Schroeder at 1524 E. Primrose, Suite A, Springfield, Missouri 65807, Telephone (417) 890-1000, Fax (417) 886-8563, or by e-mail at [bk1@dschroederlaw.com](mailto:bk1@dschroederlaw.com).

## ARTICLE II

<u>The Debtors and the Bankruptcy Estate</u>

2.01.  <u>The Debtors.</u>  Debtors SPRINGFIELD LANDMARKS PRESERVATION TRUST ("SLPT") is a Missouri non-profit corporation.  GILLIOZ RESTORATION PARTNERSHIP, LP ("GRP") is a Missouri limited partnership of which its General Partner is Netters-Gillioz, Inc., a Missouri corporation.  SLPT holds the fee interest in the three (3) tracts of real estate with building improvements located at 317 and 325 Park Central East, Springfield, Missouri.  The improvements on the respective tracts consist of the Gillioz Theatre and the

Ronald and Nancy Reagan Center (formerly the Morris Building and historically the "Netters Building"). All the improvements are sometimes referred to herein collectively as the "Theatre Buildings". The Gillioz Theatre was constructed and opened in downtown Springfield on October 11, 1926. It was placed on the National Register in 1991. The adjoining Netters Building was originally constructed in 1912. Pursuant to a seventy-five (75) year Master Lease dated April 24, 2006, SLPT leased the Theatre Buildings to Netters-Gillioz, Inc., and on that same day Netters-Gillioz, Inc. subleased the Theatre Buildings to GRP. The Leases were executed in connection with a $4,300,000.00 construction loan between GRP and Guaranty Bank pursuant to which Guaranty Bank agreed to loan GRP funds to complete major renovations to the Theatre Buildings. Repayment of the loan was to be funded in part by GRP's sale of Federal and State historic tax credits. The promissory note was subsequently amended various times to reflect an increase in the loan amounts to $5,300,000.00. The notes were secured by a Security Agreement from GRP, Amended and Restated Leasehold Deed of Trust and Security Agreements in which GRP, SLPT, and Netters-Gillioz, Inc. granted Guaranty Bank a first position security interest in their respective interest in the Theatre Buildings and related properties.

With the construction loan the property was extensively renovated and remodeled with both buildings reconfigured to function with the theatre as one (1) large complex. The Netters Building consists of three (3) floors of which each floor provides retail or commercial rental space. On the Bankruptcy Petition Date GRP had a lease of the first floor to a restaurant/bar tenant which as of the date of publication of this Disclosure Statement has been replaced with a similar lease to Lucid Entertainment, LLC. In addition SLPT had a lease of the second floor space with DBD Gourmet, Inc. SLPT also had a lease with Ozarks Technical Community College for the third floor space.

Each Debtor is basically managed and controlled by five (5) common board members with GRP basically functioning as the operating entity of the properties. GRP has one (1) full-time employee in the position of general manager and currently has three (3) part-time employees.

      2.02.    <u>Factors Contributing to the Filing of Chapter 11 Reorganization Proceeding.</u> GRP was attempting service on the promissory note held by Guaranty Bank through sale of tax credits however the note matured on June 10, 2008. Since that time Guaranty Bank received State historic tax credit proceeds in the approximate amount of $715,000.00. Previously GRP had made application with the Missouri Department of Economic Development for additional Missouri historic tax credits. The application sought sums in excess of $1,000,000.00 in additional tax credits. The application was subsequently rejected by the agency. On December 11, 2010 Guaranty Bank commenced non-judicial foreclosure proceedings against the real estate assets and related personal property with a foreclosure sale scheduled for December 31, 2010. The Debtors filed separate bankruptcy petitions on December 30, 2010 (herein the "Petition Date") and subsequently the cases were consolidated.

      2.03    <u>Nature of Assets and Liabilities Within Debtor's Bankruptcy Proceeding.</u> With the commencement of Debtor's case under Chapter 11 of the Bankruptcy Code a Bankruptcy Estate was created by virtue of Section 541 of the Bankruptcy Code with the Estate being comprised of all Debtor's legal or equitable interests in various property rights and assets. Debtor subsequently filed its Bankruptcy Schedules and Statement of Affairs for the purpose of attempting to identify the nature and extent of its assets and liabilities. The bankruptcy schedules separated creditors into creditors holding secured claims (Schedule D), creditors holding unsecured priority claims (Schedule E-generally tax claims), and creditors holding unsecured non-priority claims (Schedule F). A summary of the total amount of claims stated in the

3

aforedescribed bankruptcy schedules or as subsequently filed within these proceedings is provided below.

    Schedule D-Secured Claims
        Guaranty Bank                                $4,710,000.00
        City of Springfield                           $    13,789.39

    Schedule E-Unsecured Priority Claims
        Internal Revenue Service                     $     4,639.00

    Schedule F-Unsecured Non-Priority Claims
        SLPT                                         $ 164,335.00
        GRP                                          $ 217,734.00

Debtors disclosed the nature of their assets within their bankruptcy schedules. The assets can generally be summarized as being those of the Theatre Buildings, limited office furniture and equipment, limited theatre equipment including the sound system, and the contingent account receivable represented by the rejected additional tax credit of $1,000,000.00.

For purposes of full disclosure Guaranty Bank commissioned an appraisal of the Theatre Buildings from Southwest Valuation, LLC who concluded the value of the Theatre Buildings was $2,500,000.00. Subsequently Debtors commissioned an appraisal of the Theatre Buildings from Trimble and Associates (Branson, Missouri) and Mr. Kelly Trimble opined the value of the Theatre Buildings at $2,000,000.00. Debtors take the position that the market value of Debtors business and property "as is" value is $2,000,000.00. Upon information and belief should Debtor receive any recovery from the tax credit either through reapplication, litigation, or otherwise Debtors interest may be subject to the asserted security interest of Guaranty Bank. Notwithstanding Debtor has a legal opinion that Debtor's claim for the tax credit has merit currently Debtor is without available resources to pursue the claim. For purposes of further disclosure and the confirmation process creditors are referred to the liquidation analysis which is described at Article 8, Section 8.01 hereof.

## ARTICLE III

Description of Chapter 11 Operations

     3.01. <u>Employment of Professionals.</u> By Order entered on March 8, 2011, the Bankruptcy Court approved the Debtor's employment of appraiser Kelly Trimble.

     3.02 <u>Motion to Dismiss or Relief from the Automatic Stay.</u> On January 7, 2011 creditor Guaranty Bank filed a Motion to Dismiss the bankruptcy case or for relief from the automatic stay [doc. #9]. The Debtors filed a response and made an offer of adequate protection. The hearing was scheduled and conducted on February 8, 2011 and at the conclusion of the hearing an Order was entered denying the Motions of Guaranty Bank provided Debtors commenced making adequate protection payments in the amount of $7,500.00 per month beginning March 1, 2011 and thereafter until otherwise ordered. Debtor has been operating under the terms of the Order to date.

     3.03 <u>Motion to Continue with Line of Credit Borrowing Through the Fund of Community Foundation of the Ozarks (CFO").</u> On February 11, 2011 Debtor filed its Motion for

4

Order Permitting Debtor to Continue with Line of Credit Borrowing Through Funds of Community Foundation of the Ozarks ("CFO") [doc. #44]. Prior to the bankruptcy filing GRP initially invested $2,500.00 in a CFO fund which allowed GRP to receive advances not to exceed $12,500.00 for use to procure the contracting of performing arts in exchange for repayment of the advance upon conclusion of the respected performance. The Debtor's Motion was granted by the Bankruptcy Court on February 15, 2011 [doc. #48] and Debtors have continued with the arrangement.

3.04    Motion Authorizing Debtors to Assume Its Executory Contract with CFO with Respect to the "Save the Gillioz Fund". On February 11, 2011 Debtor filed its Motion for Order Authorizing Debtors to Assume Its Executory Contract with CFO with Respect to the "Save the Gillioz Fund" [doc. # 45]. Prior to the bankruptcy petition the Theatre Properties were subject to the foreclosure and because of the historic nature of the Theatre and its past and continuing contribution to the Springfield and Ozarks Performing Arts Community, GRP initiated a "Save the Gillioz Fund" in conjunction with CFO in which CFO established the "Save the Gillioz Fund" in which patrons could donate monies to CFO earmarked for the benefit to assist or sustain the Theatre subject to the condition that CFO may disburse amounts from the fund to sustain the Theatre and invest and reinvest the assets of the fund as CFO determined in its sole discretion. The Debtor's Motion was granted by the Bankruptcy Court on February 15, 2011 [doc. #49] and the fund and arrangement still exists. The Court Order further provides that any funds are considered organization funds of CFO and are not property of the estate.

3.05    Motion to Determine Value of Lien and Allowing Deficiency as Unsecured Claim. On March 4, 2011 Debtor filed its Motion to Determine Value of Lien and Allowing Deficiency as Unsecured Claim [doc. #60]. The Motion asserts that Debtors are in need of a determination of the value of its real estate property for the purpose of proposing its Plan of reorganization and asserts that Debtor believes the value of the real estate property is less than the total amount of the aggregate claims of Guaranty Bank and the City of Springfield and less than the separate claim of Guaranty Bank. The Motion seeks a determination of the method of valuation, the value of the respective liens held by Guaranty Bank and the City of Springfield, and to determine and allow any deficiency between the total claims of Guaranty Bank and the City of Springfield and the value of their respective liens as unsecured or undersecured claims. The Motion is currently scheduled for hearing for May 26, 2011.

3.06.    Financial Performance While In Chapter 11. Debtor has filed monthly operating reports during the Chapter 11 proceeding. A summary of Debtor's Periodic Operating Reports shall be set forth in Schedule 3.06 and circulated to creditors with the Disclosure Statement and the Court Order fixing a date for hearing on final approval of the Disclosure Statement and/or confirmation of the Plan.

**ARTICLE IV**

Expected Distributions Under the Plan

4.01.    General. Set forth in this Article is a general description of the basic treatment and the distribution with respect to claims including classes of claims and interest. This description is not intended, nor should it be relied upon, to substitute for a careful review of the actual terms of the Plan.

4.02.    Summary of Expected Distributions to Claimants. The table below summarizes the claims or classes of claims and interest and their proposed treatment under the Plan. The table

5

constitutes a summary only and must be qualified by reference to the Plan itself and the exhibits thereto and all documents described therein. Any specific claim in any specific class and the total amount to be paid may vary depending upon resolution of any objections to claims as may be filed with the Bankruptcy Court and served upon the holders of each claim to which objections are made.

| Claims/Class | Impairment | Treatment |
|---|---|---|
| Priority Tax Claim Internal Revenue Service $4,639.00 | Unimpaired | To be paid with interest in full; monthly |
| Class 1 – Guaranty Bank $2,000,000.00 secured $2,689,940.00 unsecured | Impaired | Secured portion to be paid value amortized for 25 years at 5% interest with monthly payments; unsecured claim to be treated as general unsecured claim |
| Class 2 – City of Springfield $13,789.00 | Impaired | Claim deemed undersecured and to be treated as general unsecured claim |
| Class 3 – General Unsecured Claims | Unimpaired | Prorata quarterly payment of $0.10 for each dollar (10%) of each allowed claim payable quarterly over 5 years beginning July 2012 |
| Class 4 – Equity Security Interests | Impaired | No distribution until and unless all obligations under the Plan have been performed |

### ARTICLE V

Summary of Plan

5.01  Plan In General.  Debtor's proposed Plan accompanies this Disclosure Statement. **The summaries of the Plan and other documents contained in this Disclosure Statement are qualified in their entirety by reference to the Plan itself, the exhibits thereto and all documents described therein. Creditors and other parties in interest are urged to review the Plan itself.**  Generally, the Plan requires that, after final Court approval of the Plan has been obtained, the Debtor will begin making plan payments to those of their creditors whose claims have been allowed and in accordance with the priority of classes and the specific treatment specified within the Plan.

5.02. <u>Classes of Claims And Interests and Treatment</u>**.**  The Plan divides claims and interests into separate categories, separate claims, or separate classes.  The claims and or classes and treatment to be accorded to each claim and or class under the Plan are set forth in the Table at Article IV, Section 4.02 above.

5.03. <u>Executory Contracts and Unexpired Leases.</u>  On the effective date, the Debtor shall be deemed to have assumed or rejected, as the case may be, each executory contract and unexpired lease as otherwise provided in Article V, Section 5.01 of the Plan.  Upon information and belief any and all outstanding executory contracts and unexpired leases of which the Debtors are a party are being assumed.  For purposes of disclosure and confirmation Debtor affirmatively assumes the executory contracts or unexpired leases as follows:

a. SLPT Lease with Netters Gillioz, Inc. (75 Year Master Lease, 317 and 325 Park Central East)
b. GRP SubLease with Netters Gillioz, Inc. (75 Year Master Lease, 317 and 325 Park Central East)
c. SLPT Lease with DBD Gourmet, Inc. (2nd Floor, 317 Park Central East)
d. SLPT Lease with Ozarks Technical Community College (3rd Floor, 317 Park Central East)
e. GRP Lease with Lucid Entertainment, LLC (1st Floor, 317 Park Central East)
f. SLPT/GRP Executory Contract with Community Foundation of the Ozarks re "Save the Gillioz Fund"
g. SLPT/GRP Line of Credit Borrowing Through Fund of Community Foundation of the Ozarks

## ARTICLE VI

<u>Distributions on Claims and Interests and Implementation of Plan</u>

6.01. <u>Distributions by Reorganized Debtor</u>.  Pursuant to the Plan, at Article VI, Section 6.01, the reorganized Debtor shall assume the obligation and have the duty to make distributions in accordance with the Plan.  No payment or distribution shall be made with respect to any claim to the extent it is a disputed claim unless and until all objections to such disputed claim are resolved and such disputed claim becomes an allowed claim.

6.02. <u>Treating Disputed Claims.</u>  Pursuant to the Plan, at Article VII, Section 7.02, after the date of entry of the confirmation order, the reorganized Debtor shall have the authority to (1) file, litigate to final judgment, settle, or withdraw objections to disputed claims, (2) file proof of claims on behalf of creditors who do not file claims within the period set for doing so pursuant to Bankruptcy Rule 3004, and (3) litigate to final judgment, settle, or withdraw objections to claims filed pursuant to Bankruptcy Rule 3004.   The Plan, at Article VII, Section 7.01, provides that all objections to claims must be filed or alternatively Debtor shall file all objections to claims and interests within 30 days after the effective date of the Plan.  If an objection has not been filed to a proof of claim or a scheduled claim by such date, the claim to which the proof of claim or scheduled claim relates shall be treated as an allowed claim if such claim has not been previously allowed.

6.03. <u>Undeliverable Distributions or Failure to Claim Distributions.</u>  Pursuant to the Plan at Article VI, Section 6.04, if any holder of a claim fails to accept, negotiate, or cash any distribution, no further distribution shall be made to such holder unless and until the reorganized Debtor is notified in writing of such holder's then current address or reason for failure to claim, accept, or cash the distribution.

7

6.04. <u>Effective Date of Plan</u>. The Plan provides that the effective date of the Plan shall be the first day exclusive of a Saturday, Sunday or Federal legal holiday following the 30th day after an order of the Bankruptcy Court confirming the Plan has become a final order, not subject to appeal, or if a notice of appeal has been filed with respect thereto, not stayed by any order of the Court having jurisdiction to stay such order confirming the Plan.

6.05. <u>Means for Implementation of the Plan.</u> The means for executing and implementing the Plan will be to allow the Debtor to keep and retain its property and continue the operation of its business in its ordinary course of business affairs subject to the encumbrances thereon as provided for in the Plan and allow the Debtor a period of time to satisfy its creditors as provided for in the Plan. The funds necessary for the satisfaction of the creditors' claims through payments under the Plan shall be generated from the continued operation of the business, however the Debtor may also seek to sell its assets to discharge its obligations set forth in the Plan.

6.06. <u>Retention of Jurisdiction.</u>    The Plan at Article IX provides that the Bankruptcy Court shall retain jurisdiction of these proceedings until final consummation of the Plan, notwithstanding any earlier closing of the case, pursuant to and for the purposes of Code Sections 105(a) and 1127, and as otherwise set forth in the Plan.

6.07. <u>Modification of the Plan</u>. The Plan provides that the Debtor reserves the right to alter, amend, or modify the Plan, subject to the restrictions on Plan modifications as set forth in Bankruptcy Code Section 1127.

## ARTICLE VII

Acceptance or Rejection of the Plan/Voting by Impaired Classes

7.01. <u>Classes Entitled to Accept or Reject the Plan.</u>    Whether a holder of a claim or interest is entitled to accept or reject a Plan depends on (a) the class in which the claim or interest is classified; and (b) whether that class receives property <u>and</u> is "impaired" under that Plan within the meaning of Bankruptcy Code Section 1124. Generally, whether a class is impaired depends on whether the legal, equitable, or contractual rights of the holders of claims or interests in the class are altered. The Debtor believes that each holder of an allowed claim in certain classes are impaired and, therefore, are entitled to vote either to accept or reject the Plan. Only those votes cast by holders of allowed claims shall be counted in determining whether acceptances have been received sufficient in number and amount to confirm the Plan.

7.02    <u>Acceptance by Impaired Classes.</u>  An impaired class of claims shall have accepted the Plan if: (i) the holders [other than those designated under Bankruptcy Code Section 1126(e)] of at least two-thirds in amount of the allowed claims actually voting in such class have voted to accept the Plan and (ii) the holders [other than those designated under Bankruptcy Code Section 1126(e)] of more than one-half in number of the allowed claims actually voting in such class have voted to accept the Plan.

7.03    <u>Non-Consensual Confirmation.</u> In the event that any impaired class of claims does not accept the Plan in accordance with Bankruptcy Code Section 1126, the Debtor reserves and hereby requests the Court confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

   7.04 <u>Confirmation of the Plan Without Acceptance of All Impaired Classes.</u> The Plan may be confirmed even if not accepted by all impaired classes if (i) at least one impaired class of claims has accepted the Plan, and (ii) the Plan does not "discriminate unfairly" and (iii) the Plan is "fair and equitable" as to the dissenting class(es).

## ARTICLE VIII

<u>Other Confirmation Standards</u>

   8.01 <u>Best Interests of Creditors Test.</u> Bankruptcy Code Section 1129(a)(7) requires in relevant part that, with respect to each impaired class of claims or interests under the Plan, any holder of a claim or interest in such class who does not accept the Plan must "receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of this title on such date". This provision is known as the "best interests of creditors test" and is designed to ensure that a Chapter 11 plan provides at least as much to non-consenting creditors holding claims and interests in impaired classes as those parties would receive in a Chapter 7 liquidation.

  The Debtor believes the requirement imposed by Section 1129(a)(7) is met. Debtor shall prepare a liquidation analysis for consideration in connection with the filing of this Disclosure Statement and same shall be circulated to creditors as Schedule 8.01 with the Disclosure Statement and the Court's Order fixing a date for hearing on final approval of the Disclosure Statement and/or Confirmation of the Plan. Debtor believes that if its assets were sold in the context of a forced sale (public auction or foreclosure), the liquidation value of the assets after costs of sale would be substantially less than the claims of the secured creditors. It is Debtor's opinion, absent confirmation of Debtor's proposed Plan, a conversion or dismissal of these bankruptcy proceedings would result in general unsecured creditors receiving <u>nothing</u>. Debtor's Plan proposes payment to general unsecured claims, as approved, in an amount equal to 10% of each allowed claim to be made through a prorata quarterly distribution over a 5 year period.

   8.02 <u>Feasibility.</u> Bankruptcy Code Section 1129(a)(11) requires as a condition to confirmation a showing that "confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan". Debtor believes the requirements of Section 1129(a)(11) have been satisfied as based upon Debtor's current and projected financial income and expense statements, assuming confirmation of the Plan, Debtor believes it will have sufficient cash and other assets to fund all payments to be made to holders of allowed claims and to establish appropriate reserves for any and all claims and timely payment thereof. Pursuant to Local Rule 3016-2A of the Bankruptcy Code, Debtor will prepare a profit and loss budget overview for consideration in connection with the filing of this Disclosure Statement and same shall be circulated to creditors as Schedule 8.02 with the Disclosure Statement and the Court's Order fixing a date for hearing on final approval of the Disclosure Statement and/or Confirmation of the Plan.

   8.03 <u>Disclosure of Financial Transaction with Affiliates or Insiders.</u> As of the date Debtor filed its voluntary bankruptcy petition its books and records reflect transactions with an "insider" of the Debtor, as that term is defined in Section 101(31) of the Bankruptcy Code as follows:

(i) *Service relationship with William Dunton & Associates, LLC..* William Dunton is a member of the board of both SLPT and GRP. He is also a member of the accounting firm Dunton & Associates, LLC aka Abacus CPA's, LLC. Prior to the bankruptcy petition date Dunton & Associates, LLC had provided general accounting and tax services to both Debtors and had accumulated an outstanding and unpaid statement of $56,748.00. No payments have been made on the account within the one (1) year preference period or subsequently. Notwithstanding same Mr. Dunton and his firm have continued to provide general accounting and tax services to the Debtor gratis.

8.04. Tax Consequences. Debtor is not aware of any adverse tax effects of the plan on the debtor, other than the applications of Code Section 346(j), which may effect certain favorable tax attributes held by debtor on the petition date.

THIS DISCLOSURE STATEMENT DOES NOT PURPORT TO GIVE TAX ADVICE OF ANY KIND RELATED TO THE PLAN, OR ITS IMPACT ON THE DEBTOR, CREDITORS, INTEREST HOLDERS OR OTHER INTERESTED PARTIES. SUCH PARTIES SHOULD SEEK INDEPENDENT TAX COUNSEL WITH REGARD TO THE PLAN'S IMPACT ON THEM.

## ARTICLE IX

Recommendation and Conclusion

9.01. Debtor's Recommendation. The intent of the Plan is to enable the Debtor to continue its operations thereby generating sufficient monies to pay all approved and allowed claims to the extent as set forth in the Plan. Accordingly, Debtor asserts it would be in the best interests of all classes of creditors and interest holders to vote in favor of the Plan.

Dated: May 6, 2011

                                                    DAVID SCHROEDER LAW OFFICES, P.C.

                                       BY: /s/ David E. Schroeder
                                          David E. Schroeder     #32724
                                          1524 East Primrose, Suite A
                                          Springfield, Missouri, 65804
                                          Telephone (417) 890-1000, Fax (417) 886-8563
                                          E-Mail  bk1@dschroederlaw.com
                                          ATTORNEY FOR DEBTOR

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served electronically to those parties who have entered an appearance in the Court's Electronic Court Filing (ECF) System and conventionally, via first-class mail, postage prepaid, to those parties who have requested notice but are not participating in the ECF System, pursuant to instructions appearing on the electronic filing receipt received from the U.S. Bankruptcy Court, on this 6th day of May, 2011.

                                            /s/David E. Schroeder
                                            David E. Schroeder